UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CARMEN ISAURA KAMINSKY,<br><br>      Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>      Defendant. | Case No. C13-2282-BJR-BAT<br><br>**REPORT AND RECOMMENDATION** |

  Carmen Isaura Kaminsky seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications. She contends the ALJ erred by discounting her credibility; discounting the medical opinions of Dr. Enika Cocoli, Ph.D., Dr. Lee Gustafson, Ph.D., and Dr. Luci Carstens, Ph.D.; and failing to properly account for her mental health conditions in her RFC. Dkt. 17. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings.

## BACKGROUND

  Ms. Kaminsky is currently 44 years old, has at least a high school education, and has worked as a janitor, medical assistant, retail sales clerk, and health unit coordinator. Tr. 35, 226.

REPORT AND RECOMMENDATION - 1

On May 3, 2011 and June 13, 2011, she applied for benefits, alleging disability as of January 1, 2008. Tr. 23, 226, 228. Her applications were denied initially and on reconsideration. Tr. 23. The ALJ conducted a hearing on July 16, 2012, finding Ms. Kaminsky not disabled. Tr. 23-37. As the Appeals Council denied Ms. Kaminsky's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-4.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Ms. Kaminsky had not engaged in substantial gainful activity since January 1, 2008, the alleged onset date.

**Step two:** Ms. Kaminsky had the following severe impairments: status post ankle surgery, affective disorder, anxiety disorder, personality disorder, and substance addiction in remission.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Ms. Kaminsky had the residual functional capacity to perform light work with the following relevant exceptions: she could stand and/or walk for four hours and sit for six hours. She could perform work of one, two, or three steps, requiring no more than occasional independent judgment. She could have occasional interactions with supervisors, occasional work setting change, and she could work in proximity to co-workers, but not in a team or cooperative effort. She could perform work that does not require more than occasional contact with the general public.

**Step four:** Ms. Kaminsky could not perform her past work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Ms. Kaminsky can perform, she is not disabled.

Tr. 23-37.

## DISCUSSION

**A.   The ALJ's Adverse Credibility Finding Should Be Affirmed**

Ms. Kaminsky contends the ALJ erred in finding her not fully credible. Dkt. 17 at 13.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

Where, as here, there is no evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). In assessing a claimant's credibility, an ALJ may consider the claimant's reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, daily activities, work record, and testimony from physicians and third parties. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). An ALJ may also consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

        The ALJ provided a number of reasons for finding Ms. Kaminsky's testimony not credible: (1) she engaged in activities that were inconsistent with her allegations of debilitating mental impairments, including providing intermittent childcare for her two minor children; (2) she provided inconsistent reports regarding the care she provided for her children; (3) she engaged in activities that were inconsistent with her allegations of debilitating ankle pain, including performing household chores; (4) she sought only minimal treatment for her ankle impairment; and (5) her allegations were inconsistent with the objective medical evidence and the reports from consultative examiners. Tr. 29-32. Ms. Kaminsky challenges only some of these.

        Ms. Kaminsky first argues her reports regarding her ability to provide childcare were not inconsistent because they accurately describe different periods and events. Dkt. 17 at 14. The Court agrees that any "inconsistencies" are not clearly attributed to dishonesty. Substantial

REPORT AND RECOMMENDATION - 3

...

...

evidence does not support the ALJ's conclusion that Ms. Kaminsky was not credible when the ALJ compares, for example, Ms. Kaminsky's involvement with her children in December 2010 (waking at 6:00 am to get children read for school) to her involvement with them in May 2011 (caring for children only one to two days per week, with help from her ex-husband). *See* Tr. 30. The ALJ has simply failed to explain why these facts undermine Ms. Kaminsky's credibility.

Ms. Kaminsky also challenges the ALJ's determination that her household chores weakened her allegations of physical disability. Dkt. 17 at 15 (*citing* Tr. 31). The ALJ noted Ms. Kaminsky stated she cannot stand or walk long, and that after twenty minutes, she must sit and elevate her ankle. Tr. 29 (*citing* Tr. 313, 333). At her hearing, Ms. Kaminsky testified that chores are a mandatory part of living in her clean and sober house, and that she is assigned a rotating chore each week. Tr. 53. Examples of these rotating chores include cleaning the living room (dusting and vacuuming), bathroom (cleaning the toilet and sink), and kitchen (removing crumbs from the counter, wiping off the stove). Tr. 53-54. A Function Report completed in 2009 indicated Ms. Kaminsky also did her own laundry. Tr. 31 (*citing* Tr. 289). Contrary to the ALJ's assertions, the evidence of Ms. Kaminsky's minimal chores does not support the ALJ's description of the activities as requiring "significant physical activity" that would be inconsistent with Ms. Kaminsky's testimony.

Ms. Kaminsky also contends the ALJ erred in finding her mental health symptoms were inconsistent with the objective medical records. Dkt. 17 at 15 (*citing* Tr. 31). The ALJ found Ms. Kaminsky "has been noted to have normal mood and affect." Tr. 31. The record evidence the ALJ relies upon, however, paints a different picture: Ms. Kaminsky's mood and affect are alternately described as "flat," "happy," "depressed/restricted," and "anxious and mildly agitated, with affect congruent with presenting mood." Tr. 370-373, 496, 568. Not only does this

REPORT AND RECOMMENDATION - 4

evidence fail to support the ALJ's conclusion that Ms. Kaminsky had normal mood and affect, it indicates that the ALJ's findings were selective, and thus, not clear and convincing. *See Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (ALJ improperly "developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports [and] paraphrasing of record material [such that it] is not entirely accurate regarding the content or tone of the record."); *see also Garrison v. Colvin*, No. 12-15103, 2014 WL 3397218 at *18 (9th Cir. 2014) ("it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). Further, the evidence is consistent with Ms. Kaminsky's testimony that she experiences "ups and downs" in her depression. Tr. 65.

The ALJ also rejected Ms. Kaminsky's testimony, because, though she testified she had difficulty focusing and concentrating (particularly around a trade school certificate program), Tr. 29, 59, her "memory, insight, and judgment have also been observed to be within normal limits," Tr. 31. The ALJ's conclusion is problematic. First, the ALJ fails to draw any clear connections between focus and concentration; and memory, insight, and judgment. Additionally, at least one of the medical records relied upon by the ALJ that indicates Ms. Kaminsky's memory was "within normal limits," also indicates her judgment and insight was "poor to fair." *See* Tr. 31 (*citing* Tr. 532).

Additionally, the ALJ erred in failing to explain the relevance of her determination that Ms. Kaminsky was "regularly cooperative, alert, responsive, and demonstrated clear logical speech during evaluations." Tr. 31. Thus, the ALJ has failed to identify "what *testimony* is not credible." *Lester*, 81 F.3d at 834 (emphasis added). Accordingly, the Court has nothing to evaluate in determining whether, on this basis, the ALJ rejected Ms. Kaminsky's testimony on

REPORT AND RECOMMENDATION - 5

permissible grounds.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony").[3]

Despite the above errors, which occupy just three of the eight paragraphs that constitute the ALJ's discussion of Ms. Kaminsky's credibility, the ALJ provided other unchallenged reasons, which are clear, convincing, and supported by substantial evidence.[4]  *See* Tr. 29-32.  Thus, even assuming the ALJ erred as Ms. Kaminsky argues, Ms. Kaminsky has not established harmful error.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason, among other reasons, to discount a claimant's credibility is at most harmless error if the other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall credibility determination).  Accordingly, the Court recommends affirming the ALJ's credibility finding.

**B.     Dr. Carstens' April 2012 Medical Opinion Should Be Reevaluated**

---

[3] In addition, the ALJ's finding that one provider's notation of Ms. Kaminsky's "evidence of sun exposure" disproves she spent a significant amount of time in bed is unavailing.  Tr. 31 (*citing* Tr. 446).  Spending time in bed is not clearly inconsistent with having some sun exposure; moreover, it is entirely unclear what the provider meant by including that phrase.  An equally reasonable interpretation would suggest Ms. Kaminsky appears to have been exposed to the sun throughout her life.

[4] For example, the ALJ found evidence Ms. Kaminsky engaged in activities that contradict her allegations of isolation and avoidance, including playing softball, consistently attending NA and AA meetings, reporting a "good support structure with friends" through the NA and AA programs, attending a welding program for two quarters, taking her children to the park, going to the gym, and going to barbeques.  Tr. 29-30.  The ALJ also noted Ms. Kaminsky's failure to seek treatment after September 2010 undermined her allegations of severely limiting ankle pain.  Tr. 30.  Additionally, a July 2011 report noted Ms. Kaminsky did not limp and her balance was intact; Tr. 31 (*citing* Tr. 501), the doctor opined Ms. Kaminsky could stand for four hours in an eight-hour day, Tr. 502.  The Court also observes that a report from consultative examiner Enika Cocoli, Ph.D., notes Ms. Kaminsky "stated that she needs her [*sic*] surgery but does not want it."  Tr. 495.

Ms. Kaminsky next argues the ALJ erred in discounting the opinions of examining doctors Enika Cocoli, Ph.D., Lee Gustafson, Ph.D., and Luci Carstens, Ph.D.  When an examining doctor's opinion is not contradicted by another doctor, the ALJ may reject the opinion only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 830 (9th Cir. 1988).  When a treating or examining doctor's opinion is contradicted by that of another doctor, it may not be rejected without "specific and legitimate reasons based on substantial evidence in the record."  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  The Court may set aside the ALJ's decision if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005).

   1.   *Enika Cocoli, Ph.D.*

Consultative examiner Dr. Cocoli opined that if Ms. Kaminsky was properly treated with medication, she "may be able to demonstrate mild impairment in interpersonal situations such as exchanges with coworkers, supervisors, and the public.  Without treatment, these abilities are likely to be markedly to severely impaired."  Tr. 497.  The ALJ assigned only "some" weight to the opinion because the doctor did "not describe the most the claimant is capable of doing, as must be included in the residual functional capacity."  Tr. 34.  The ALJ erred in finding the medical opinion evidence must describe "the most a claimant can do," as required by the RFC, because a claimant's RFC is an administrative assessment left to the ALJ.  *See* SSR 96-8p.[5]  Rather, Social Security regulations provide that the ALJ must consider medical opinions regarding, among other things, the *nature and severity* of a claimant's impairments.  20 CFR §§ 404.1527(a)(2), 416.927(a)(2); *see also* SSR 96-5p ("Although the overall RFC assessment is an

---

[5] SSR 96-8p provides:  "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."

REPORT AND RECOMMENDATION - 7

administrative finding on an issue reserved to the Commissioner, the adjudicator must nevertheless adopt in that assessment any treating source medical opinion (i.e., opinion on the nature and severity of the individual's impairment(s)) to which the adjudicator has given controlling weight under the rules in 20 CFR 404.1527(d)(2) and 416.927(d)(2)."). The ALJ's reasoning is neither clear and convincing, nor specific and legitimate.[6]

But even if the ALJ failed to provide valid reasons for rejecting Dr. Cocoli's opinion, Ms. Kaminsky has not demonstrated that any error is harmful. First, she fails to address the doctor's opinion that she "may be able to demonstrate mild impairment in interpersonal situations" with treatment. *See* Tr. 497. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for ... benefits." *Warre v. Comm'r, Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Second, though she states in a conclusory manner that the opinion suggests her "work functioning would be impaired to a point that she would be unable to sustain work at the substantial gainful activity (SGA) level," Dkt. 17 at 4-5, Ms. Kaminsky fails to identify any corresponding limitations that have not already been incorporated into her RFC. Even impairments deemed severe do not, as a matter of course, necessarily result in RFC limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) ("impairment(s) and any related symptoms . . . *may* cause physical and mental limitations that affect what you can do in a work setting.") (emphasis added); *see also Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1228-29 (9th Cir. 2009) ("Bray offers no authority to support the proposition that severe mental impairment must correspond to limitations on a claimant's ability to perform basic work

---

[6] Ms. Kaminsky does not argue that either the clear and convincing, or specific and legitimate standard applies, nor does she suggest Dr. Cocoli's opinion was contradicted by any other opinion. Dkt. 17 at 4-5. The Commissioner does not identify any conflicting opinions, but nonetheless concludes the ALJ "gave specific and legitimate reasons for discounting Dr. Cocoli's opinion." Dkt. 18 at 8. The Court need not determine which standard applies because it finds the ALJ failed to provide valid reasons meeting either standard.

REPORT AND RECOMMENDATION - 8

activities."). Third, Ms. Kaminsky does not adequately address the fact that Dr. Cocoli's opinion regarding the nature and severity of her impairments is equivocal.[7] Furthermore, on this record, it is unclear whether Ms. Kaminsky's potential mild, marked or severe impairments in interpersonal situations are even at odds with her RFC, which incorporates occasional interactions with supervisors, proximity to coworkers (but not in a team or cooperative effort), and preclusion of work that requires more than occasional contact with the general public. *See* Tr. 28. In this context, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Cf.*, *Turner v. Comm'r, Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ need not provide reasons for rejecting a physician's opinion where the ALJ incorporated them into the RFC).

The ALJ also found the doctor's opinion that Ms. Kaminsky's "ability to tolerate frustration, her chaotic lifestyle, and the expectable internal chaos, may make it difficult to follow up on cognitive tasks such as following simple instructions, following complex instructions, learning new tasks, and performing routine tasks without excessive supervision" was vague and "appears to account for factors in the claimant's life that cannot be considered in a disability evaluation." Tr. 34, 497. Dr. Cocoli's statement does not identify functional limitations; rather it speculates that Ms. Kaminsky "may" have difficulties in cognitive functioning due to environmental circumstances. A physician's opinion need not be given controlling weight when it is "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings." *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Here, the ALJ properly reasoned Dr. Cocoli's vague conclusions failed to identify

---

[7] Ms. Kaminsky argues only that the ALJ erred in discounting the opinion because the word "likely" in describing her limitations as markedly or severely impaired still suggests she would be unable to work. Dkt. 17 at 4-5. This argument is disingenuous, because the doctor in fact opined her limitations "may" be mild, marked, or severe. Tr. 497.

REPORT AND RECOMMENDATION - 9

functional limitations flowing from Ms. Kaminsky's medically determinable impairments.  Ms. Kaminsky has not established any additional limitations related to abilities to interact with others or to cognitive functioning.  Thus, any error would be harmless because it would be inconsequential to the ultimate nondisability determination.  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).  The Court thus recommends affirming the ALJ's decision discounting the opinion of Dr. Cocoli.

### 2.     *Lee Gustafson, Ph.D.*

Ms. Kaminsky next challenges the ALJ's rejection of two psychological/psychiatric evaluations completed by Dr. Lee Gustafson, Ph.D.  Dkt. 17 at 5.  The ALJ provided three invalid reasons for discounting the opinions, but the fourth reason the ALJ provided was valid.

The ALJ assigned "little weight" to Dr. Gustafson's opinions because she concluded the doctor failed to review Ms. Kaminsky's medical records and relied heavily on her self-reporting.  Tr. 34.  Though it is true the doctor conducted her evaluations without access to Ms. Kaminsky's record, Tr. 472, 478, the ALJ failed to provide any basis for implicitly concluding that Dr. Gustafson disregarded his own observations in favor of Ms. Kaminsky's subjective reporting.  The evaluation form directs the doctor to base findings on personal observations, and to indicate whether symptoms were observed, which he did.  Tr. 472-482.  Accordingly, substantial evidence does not support the ALJ's finding that Dr. Gustafson relied on Ms. Kaminsky's self-reports, to the exclusion of objective findings.  *Cf. Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ "may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible").  Additionally, substantial evidence does not support the ALJ's finding that Dr. Gustafson provided very little explanation for his opined marked functional limitations.  Tr. 34. The doctor conducted two mental status

exams, which indicated Ms. Kaminsky was depressed, she cried throughout the interview and her affect was "constricted," her thought process was scattered, and she exhibited some suicidal ideation.  *See* Tr. 477, 481-82.

The ALJ also rejected the opinion because "in the claimant's ability to perform basic work-related activities (11F4), [Dr. Gustafson] does not describe the most the claimant is capable of doing as I am tasked with determining."  Tr. 34.  This reason is neither clear and convincing nor specific and legitimate.  To the extent the ALJ repeats her argument that a medical opinion must describe the most a claimant is capable of doing despite her impairments, the argument is without merit, as discussed above.  In the alternative, the ALJ appears to have misconstrued the record she cites, which prompts the doctor to "[d]escribe *effects of prescribed medication* on the individual's ability to perform normal day-to-day work activities."  Tr. 475 (emphasis added).  In answering "none," the doctor was not avoiding opining the most Ms. Kaminsky could do; rather, he was indicating Ms. Kaminsky's ability to work was not impacted by her prescribed medications.  *See id.*

But the ALJ also discounted the opinion due to inconsistencies between the doctor's reports.  Tr. 34.  In May 2010, Dr. Gustafson indicated Ms. Kaminsky exhibited marked impairments in learning new tasks — a measure of cognitive functioning — which he based on his observation that she "spends most of time in bed."  Tr. 475.  Yet in December 2010, Dr. Gustafson stated Ms. Kaminsky was markedly impaired in learning new tasks because she was "hypersensitive, easily distracted, anxious and depressed."  Tr. 480.  The ALJ also noted that, in May 2010, Dr. Gustafson indicated Ms. Kaminsky would have marked impairments in relating to coworkers and supervisors, based on his observation she spends most of her time in her room and isolates herself.  Tr. 473, 475.  Yet in December 2010, he indicated her ability to perform

REPORT AND RECOMMENDATION - 11

routine tasks without undue supervision was markedly impaired because she was "afraid to be alone."  An ALJ may properly consider internal inconsistencies within and between a physician's reports.  *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).  It was not unreasonable for the ALJ to interpret these findings at odds.

Although the ALJ's treatment of Dr. Gustafson's opinions are not error-free, the Court finds any error would not negate the validity of the overall credibility determination and thus is harmless.  *See Carmickle*, 533 F.3d at 1162, 1163 n.4 (the key issue is "whether the ALJ's underlying decision remains supported, in spite of any error, and not whether the ALJ would necessarily reach the same result on remand.").  Thus, the Court recommends affirming the ALJ's evaluation of Dr. Gustafson's opinions.

   3.   *Luci Carstens, Ph.D.*

The ALJ's reasons for assigning little weight to the opinions of Dr. Luci Carstens, Ph.D., mimic those she used for rejecting the opinions of Drs. Cocoli and Gustafson.  She first rejected Dr. Carstens' May 2011 opinion because "she does not describe the most the claimant can do, and her opinion is therefore vague."  Dkt. 34 (*citing* Tr. 486).  As discussed above, this is not a valid basis for rejecting the opinion, particularly where, as here, the portion of the record the ALJ cites references an attached Medical Source Statement, which indicates activities Ms. Kaminsky may still complete despite her impairments.  *See* Tr. 492.

The ALJ also discounted the opinion because the doctor relied on Ms. Kaminsky for "all of the information for her evaluations."  Tr. 34.  This is not borne out by the record.  The doctor's opinion is appropriately informed by the subjective complaints of Ms. Kaminsky, but also by the doctor's own observations, and by the results of several diagnostic tests, including the Hirschfeld Advanced Mood Disorders Questionnaire, the International Personality Disorders

REPORT AND RECOMMENDATION - 12

1  Examination Screening Questionnaire, and a mental status exam.  Tr. 488-490.  The ALJ simply
2  ignores these diagnostic exams.
3        The ALJ next found Dr. Carstens' opinion was "inconsistent with her notations the
4  claimant had no difficulties with transportation, communication, her activities of daily living, or
5  her ability to manage her finances, and the claimant's care of her children and engagement in
6  community activities (12F10)."  Tr. 34 (*citing* 486).  Dr. Carstens assessed marked impairments
7  in Ms. Kaminsky's ability to communicate and perform effectively in a work setting with public
8  contact.  Tr. 486.  Yet, in the medical source statement of the same date, the doctor found Ms.
9  Kaminsky was "able to communicate needs and advocate for self appropriately."  Tr. 492.  The
10 ALJ properly discounted the opinion on this basis.  *Morgan*, 169 F.3d at 603.  Accordingly, any
11 error would not negate the validity of the overall credibility determination and is thus harmless.
12 *See Carmickle*, 533 F.3d at 1162, 1163 n.4.
13       As for Dr. Carstens' April 2012 evaluation, the ALJ rejected it because "Dr. Carstens
14 does not explain her suggested limitations, or describe the most the claimant can do in a work
15 setting," and because it was "inconsistent with her notation the claimant is independent in her
16 activities of daily living, and is able to interact with others on a limited basis."  Tr. 34.  As above,
17 the ALJ's reasoning concerning the doctor's description of the most Ms. Kaminsky can do is not
18 a valid reason for rejecting the opinion.  Similarly, the ALJ's finding Dr. Carstens failed to
19 explain her suggested limitations is belied by the record, in which the doctor summarized a
20 clinical interview, conducted a Mental Status Exam, and a Psychiatric Diagnostic Screening
21 Questionnaire (PDSQ).  Tr. 567-570.  Additionally, the ALJ's last finding, regarding
22 inconsistencies, is vague.  It is unclear why the doctor's finding Ms. Kaminsky was able to
23 perform very basic activities of daily living (including performing basic hygiene, shopping for

groceries, and making/keeping appointments) and that she was able to interact with others on a limited basis, was inconsistent with the doctor's opined limitations. *See* Tr. 567-68. If there are legally valid reasons to reject Dr. Carstens' April 2012 opinion, the ALJ failed to provide them. On remand, the opinion should be reevaluated.

**C.    Ms. Kaminsky's RFC Should Be Reevaluated in Light of Dr. Carstens' Opinion**

The ALJ found Ms. Kaminsky could perform light work with a number of exceptions. Tr. 28. Ms. Kaminsky argues this RFC is not supported by substantial evidence. Dkt. 17 at 10. In making her argument, Ms. Kaminsky reiterates previously addressed and rejected arguments regarding the medical opinion evidence. Dkt. 17 at 10-11. Because the Court finds the ALJ did not err in discounting Dr. Carstens' 2011 opinion, and Dr. Cocoli's and Dr. Gustafson's opinions, Ms. Kaminsky cannot establish that the ALJ erred in failing to incorporate these opinions in her RFC assessment. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Ms. Kaminsky also cites other medical records, suggesting the opinions of Drs. Cocoli, Gustafson, and Carstens are themselves supported by substantial evidence. *See* Dkt. 17 at 11 ("Other providers in the record made similar observations."). But these records do little to buttress her argument that the ALJ erred in her RFC. First, the relevant inquiry is not whether there is some evidence to support Ms. Kaminsky's position, but whether there was substantial evidence to support the ALJ's decision. Second, though these other records, and Ms. Kaminsky's discussion of them, refer to symptoms and diagnoses, they do not assess limitations that have not already been incorporated into the RFC.[8] *See* Dkt. 17 at 11-13 (*citing* Tr. 386, 407,

---

[8] Ms. Kaminsky quotes Dr. Aaron Hunt's opinion that her 'mental health illness could affect the ability to maintain regular attendance in the workplace or participate in the workday," Dkt. 17 at 12 (*citing* Tr. 386), however, Dr. Hunt opined "[t]here was nothing to suggesting [*sic*] that the

REPORT AND RECOMMENDATION - 14

446, 504, 513, 574, 596, 623). Though it is true that an ALJ must explain why "significant, probative evidence has been rejected," *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984), Ms. Kaminsky does not demonstrate how these records contain significant or probative evidence. Because the records fail to demonstrate additional limitations that should have been included in her RFC, Ms. Kaminsky has not shown harm.

However, as the ALJ improperly rejected Dr. Carstens' April 2012 opinion, Ms. Kaminsky's RFC must be reevaluated in light of that opinion. On remand, after reevaluating Dr. Carstens' April 2012 opinion, the ALJ shall also reevaluate Ms. Kaminsky's RFC as necessary.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.

On remand, the ALJ should reevaluate the April 2012 opinion of Dr. Carstens, and as necessary, reevaluate Ms. Kaminsky's RFC and steps four and five of the five-step evaluation process.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **September 22, 2014**. If no objections are filed, the matter will be ready for the Court's consideration on **September 23, 2014**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed

---

claimant suffers from ongoing functional impairment primarily due to a mental illness or defect . . . [t]reatment would likely improve their [*sic*] ability to participate in work-related activities . . . [and] to manage . . . stressors." Tr. 386.

1  twelve pages.  The failure to timely object may affect the right to appeal.

2  DATED this 8th day of September, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16